## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

———————————————————

| | |
|---|---|
| FARM BUREAU PROPERTY & CASUALTY INSURANCE CO., | |
| Plaintiff, | |
| v. | No. 21-CV-527-BRB-GJF |
| CHRISTOPHER GOMEZ and IDA ORNELAS, | |
| Defendants. | |

———————————————————

## ORDER DENYING DEFENDANT ORNELAS'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY

———————————————————

In June 2021, Plaintiff Farm Bureau Property & Casualty Co. ("Plaintiff"), filed a complaint in this Court, seeking a declaration clarifying its obligations to its alleged insured, Christopher Gomez. (Doc. 1). Specifically, Plaintiff asks the Court to declare that it owes neither a duty to defend nor a duty to indemnify Gomez in an underlying lawsuit pending in New Mexico state court. Gomez has been served but has not answered Plaintiff's complaint. The plaintiff in the underlying state action, Defendant Ida Ornelas ("Defendant Ornelas"), however, has answered Plaintiff's complaint and filed a motion to dismiss or, in the alternative, stay this action pending the outcome of the state court proceedings. (Docs. 5, 6). The Court now considers this motion. For the reasons stated

1

herein and in a sound exercise of its discretion, the Court shall deny Defendant Ornelas's motion and retain jurisdiction over this action.[1]

I.

The historical facts of this case, as articulated in the underlying state complaint, appear undisputed.  On April 8, 2019, Defendant Ida Ornelas was at her grandmother's home in Artesia, New Mexico, when Defendant Christopher Gomez broke in and attacked her.  Ornelas and Gomez had been in a three-year relationship and have a child together. Gomez is a recovering drug addict who was physically and emotionally abusive to Ornelas. Ornelas ended her relationship with Gomez and obtained a restraining order against him. Ornelas subsequently entered a new relationship and went to Artesia General Hospital to have a pregnancy test confirmed.  The results of that pregnancy test were conveyed to Gomez without Ornelas's permission and in apparent violation of the Health Insurance Portability and Accountability Act (HIPAA).

A few days after that disclosure, Gomez arrived at Ornelas's grandmother's home and broke in.  Ornelas hid in a closet with her child and Gomez's other child from a previous relationship, who was also staying at the house.  Gomez dragged Ornelas out of

---

[1] Plaintiff alleges that Defendant Ornelas failed to comply with Local Rule 7.1 in filing this motion.  Plaintiff's Resp. at 1.  Local Rule 7.1 states "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  Defendant Ornelas concedes that her motion does not comply with Local Rule 7.1 and attempts to justify this failure by arguing "it is assumed that Plaintiff will oppose."  Defendant Ornelas's Reply at 1.  Although the Court would be within its purview to deny Defendant Ornelas's motion on this ground alone, it has addressed the merits of the motion. Nonetheless, the Court cautions counsel to comply with the rules of this Court in future.

the closet and proceeded to beat and stab her.  The police arrived and deployed a taser on Gomez, ending the attack.  Ornelas suffered severe injuries and had to be airlifted to a hospital in Lubbock, Texas to receive treatment.

In April 2019, Ornelas filed the underlying lawsuit in New Mexico state court against Gomez, Artesia General Hospital, and the nurse who allegedly disclosed the results of Ornelas's pregnancy test to Gomez.  *Ornelas v. Artesia Gen. Hosp.*, No. D-503-CV-201900713 (N.M. 5th Dist., Eddy Co., filed April 25, 2019) ("Ornelas action").  The Ornelas action seeks damages for negligence, respondeat superior, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium.  Plaintiff is not a party to the Ornelas action and was not notified about Defendant Ornelas's claim against Gomez until February 2021.  Plaintiff agreed to defend Gomez pursuant to an insurance policy held by his father, Lawrence Gomez, but subjected that defense to a complete reservation of rights.

Plaintiff subsequently filed this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 seeking a declaration that it does not owe Gomez a duty to defend or indemnify in the Ornelas action.  Plaintiff's complaint sets forth five arguments explaining why it should not be obligated to defend or indemnify Gomez.  First, Plaintiff alleges that Gomez's failure to notify it of the Ornelas action in a timely manner absolves it of any duties under the policy.  Second, Plaintiff claims that Gomez is not actually covered by the policy at all because he is not a named insured and is not part of the "household" as defined by the policy.  Third, Plaintiff asserts that the claims in the Ornelas action fall within the policy's "Molestation or Abuse exclusion," eliminating any duty to defend or indemnify.

3

Fourth, Plaintiff argues that the policy's "Intentional Acts exclusion" covers the acts alleged in the Ornelas action and precludes coverage.  Finally, Plaintiff alleges the policy does not cover the Ornelas action's claim for exemplary and punitive damages.

Defendant Ornelas has filed a motion to dismiss, arguing the Court should exercise its discretion to decline jurisdiction in this case.[2]  Alternatively, Defendant Ornelas asks the court to stay the action until the state proceedings are completed.  Plaintiff opposes this motion and argues the Court should exercise jurisdiction over the case.

## II.

The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n v. Wycoff Co*, 344 U.S. 237, 241 (1952)); *see also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) (holding that although a district court with proper

---

[2] Defendant Ornelas also raises a perfunctory argument that "Ms. Ornelas' State Court Complaint . . . reflects there is no diversity of citizenship when all the necessary claims and parties are joined."  Defendant Ornelas's Mot. at 1.  Defendant Ornelas does not develop this argument.  Nonetheless, "district courts have an independent obligation to address their own subject-matter jurisdiction."  *City of Albuquerque v. Soto Enters.*, 864 F.3d 1089, 1093 (10th Cir. 2017).  First, the Court notes that the complaint Defendant Ornelas cites in support of this contention is no longer the operative complaint, having been superseded by two amended complaints.  Second, Plaintiff is incorporated and headquarter in Iowa, while Defendants are both citizens of New Mexico.  Third, Defendant Ornelas seeks "indemnity benefits in the amount of $1,000,000 or policy limits, which are in the amount of $300,000."  Compl. ¶ 36.  Therefore, the Court determines that the requirements of 28 U.S.C. § 1332 are met.

jurisdiction could have resolved a declaratory action, "it was under no compulsion" to do so.).

Brillhart and Wilton are "the seminal cases dealing with discretion to dismiss or stay 'declaratory judgment actions.'"  United States v. City of Las Cruces, 289 F.3d 1170, 1181 (10th Cir. 2002).  In Brillhart, the Court detailed certain factors that courts should consider when addressing this issue, including "the scope of the pending state court proceeding and . . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding."  316 U.S. at 495.  The Court further cautioned against "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation."  Id.

In Wilton, the Supreme Court reaffirmed "the Brillhart regime, under which district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending proceedings."  515 U.S. at 286.  Wilton further reiterated that, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Id. at 288.  The Court emphasized, however, that it was addressing the question of which line of cases "governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings."  Id. at 279 (emphasis added).  Because Wilton addressed a case where both the underlying state action and the federal declaratory action "encompassed the same coverage issues," the Court expressly limited the applicability of its holding to parallel proceedings.  Id. at 280; see id. at 290 ("Like the Court of Appeals, we conclude only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings,

5

presenting opportunity for ventilation of the same state law issues were underway in the state court.").

In sum, these cases establish a district court's discretion to retain or dispose of declaratory actions, while cautioning against unnecessary interference in ongoing parallel state proceedings.  The Declaratory Judgment Act would serve little purpose, however, if *Brillhart* and its progeny are mechanically read to require the dismissal or stay of a declaratory action in all but the most unusual of circumstances.

III.

The Tenth Circuit has also expounded upon the principles laid out in *Brillhart* and *Wilton*.  Like the Supreme Court, the Tenth Circuit has afforded district courts substantial discretion and deference in their handling of declaratory actions.  *See, e.g.*, *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269 (10th Cir. 1989); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994) (White, J., sitting by designation); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995).  Nevertheless, the Tenth Circuit has provided "substantial guidance" to district courts considering the appropriateness of jurisdiction in a declaratory action.  *Mhoon*, 31 F.3d at 983.

 For example, in *Kunkel v. Continental Casualty Company*, the Tenth Circuit addressed a case "where the existence of coverage remain[ed] dependent upon" the determination of facts at issue in underlying or collateral actions.  866 F.2d at 1271.  The *Kunkel* Court cautioned that "[a] federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."  *Id.* at 1276 (citing *Brillhart*, 316 U.S. at

6

495).  Nonetheless, the *Kunkel* Court was careful to carve out the caveat that "nothing in the Declaratory Judgment Act prohibits a court from deciding a *purely legal question* of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues."  *Id.* (emphasis added).

Later, the Tenth Circuit issued what is, in many respects, the key authority on whether a district court should retain jurisdiction over a declaratory action.  In *State Farm Fire & Casualty Company v. Mhoon*, the Tenth Circuit considered an instance where the district court had not only retained jurisdiction over the action but had rendered judgment on the merits in favor of the insurance company as well.  *See* 31 F.3d at 981–82.  The district court had ruled on questions that were "before both the state and federal courts simultaneously" including whether the insured had acted intentionally while committing tortious acts.  *Id*. at 983.  The Tenth Circuit nonetheless affirmed both the retention of the case and its disposition on the merits.  *See id*. at 981–82, 987.

Writing for the Tenth Circuit, Justice Byron White reasoned "that a live need for a declaration of . . .  rights and duties did, in fact exist," and "that there [was] a substantial interest in deciding the issues without undue delay, particularly the question of the duty to defend."  *Id*. at 984 (citation omitted).  Justice White noted that the district court had ruled on the question of whether the insurance company owed a duty to its insured "as a matter of law" and that "[d]etermining [the duty to defend] involved no matter, factual or legal, at issue in the state case."  *Id*.  In reaching its conclusion, the *Mhoon* court detailed a list of factors for district courts to consider in evaluating the appropriateness of retaining jurisdiction over a declaratory action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987) (alteration in original)).  In sum, *Mhoon* not only represents the key test that district courts in this Circuit must follow, but also illustrates the broad discretion district courts have in these types of cases.

## IV.

The Court now applies the *Mhoon* factors to this case.  As a threshold matter, while the *Mhoon* factors are a means of guiding the Court's analysis, "they are not [individually] determinative."  *City of Las Cruces*, 289 F.3d at 1183 (citation omitted).  The first two *Mhoon* factors, whether declaratory relief will "settle the controversy" and whether "it would serve a useful purpose in clarifying the legal relations at issue" are best considered together.  *See id.* (quoting *Mhoon*, 31 F.3d at 983).  The Tenth Circuit has made clear that "[t]hese two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings."  *Id.*  According to Defendant Ornelas's view, these factors weigh in favor of dismissing or staying the action.  Defendant Ornelas argues "there is a significant overlap in the underlying facts for each case, and a resolution of the state case would resolve the legal relations at issue in this case."  Defendant Ornelas's Mot. at 3.  Defendant Ornelas concedes, however, that Plaintiff is not a party to the state case.  *Id.*

Plaintiff responds by highlighting the fact that it is not a party to the underlying suit and "[t]he underlying state court proceeding does not raise issues as to the coverage provided by the Policy." Plaintiff's Resp. at 8.

In this case, little doubt exists that declaratory relief would "settle the controversy" between Plaintiff and Defendants. *See Mhoon*, 31 F.3d at 983. That is, at the conclusion of this action, the Court would either issue a declaration stating that Plaintiff does not owe a duty of defense or indemnity to Gomez, or it would not. Either way, the heart of this controversy would be resolved. That being the case, the first factor clearly weighs in favor of retaining jurisdiction. Likewise, the Court has little difficulty concluding that the second factor weighs in favor of retaining jurisdiction. The Tenth Circuit has "expressly recognized that one of the primary functions of the Federal Declaratory Judgment Act is to provide the insurer" with a forum to resolve its coverage responsibilities. *Horace Mann Ins. Co. v. Johnson*, 953 F.2d 575, 579 (10th Cir. 1991) (cleaned up and citation omitted); *see also Essex Ins. Co. v. McClellan-Vick Consulting, Inc.*, CIV. No. 15-289 GBW/SCY, 2015 WL 12867008, at *6 (D.N.M. Sept. 23, 2015) (applying the same quotation and reasoning). As such, allowing this action to proceed would be "useful" in "clarifying the legal relations" between Plaintiff and Defendants, particularly Gomez. *See Mhoon*, 31 F.3d at 983.

The third *Mhoon* factor asks the Court to analyze whether the declaratory action has been filed for an improper purpose, such as "procedural fencing" or to create "a race to *res judicata*." *Id.* Defendant Ornelas argues this factor weighs in favor of dismissal because of the timing of Plaintiff's lawsuit. Citing to *St. Paul Fire & Marine Insurance Company*

*v. Runyon*, Defendant Ornelas contends the fact "the state action was filed over two years before the complaint in this case" is evidence of improper purpose.  *See* Defendant Ornelas's Mot. at 5 (citing 53 F.3d 1167 (10th Cir. 1995)).  Plaintiff responds that *Runyon* is inapposite because in that case the insurance company had known about the possible claim for years before taking any legal action.  *See* Plaintiff's Resp. at 12 (citing *Runyon*, 53 F.3d at 1170).  In contrast, Plaintiff asserts, Gomez only informed it of the pending litigation in February, 2021.  *See id.*  Further, Plaintiff argues it is seeking "a substantive adjudication of its rights and obligations."  *Id.* at 12–13.

As noted previously, one of the primary concerns of the *Brillhart/Wilton* line of cases is avoiding federal entanglement in *parallel* state proceedings.  *Runyon* itself tracks with this understanding.  In that case, the insurance company filed its declaratory action against its insured the day before it knew the insured would file his own breach of contract suit against the company in state court.  *Runyon*, 53 F.3d at 1168.  Thus, the two suits at issue in *Runyon* were parallel because both directly implicated the same legal issue— whether the insurance company owed a duty to its insured.  *See id.*  In contrast, this case does *not* involve parallel proceedings.  The underlying state action involves tort claims between the two defendants and other non-parties to the present action, while the federal action only concerns Plaintiff's duties to one of the defendants.  Therefore, the concerns highlighted by *Runyon* are inapplicable here.  Because of this, the Court is reluctant to find that Plaintiff's suit is an example of procedural fencing.  Accordingly, the third factor weighs in favor of jurisdiction.

Next, the Court considers the fourth *Mhoon* factor, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983. Defendant Ornelas accuses Plaintiff of "forum shopping" and argues this factor weighs in favor of dismissal because "[t]he coverage question can be litigated and decided in state court as well as it can here, and in fact, state court is the more appropriate forum in which to decide the insurance coverage issue because the issue will be governed by New Mexico law and public policy." Defendant Ornelas's Mot. at 5 (citations omitted). For its part, Plaintiff claims that retaining jurisdiction over this action would not cause "friction between federal and state courts." *See* Plaintiff's Resp. at 13. Plaintiff argues that Defendant Ornelas "fails to note that there are *multiple* policy defenses that may allow the Court to determine whether the alleged actions underlying the state court complaint are excluded from coverage as a matter of law." *Id.* (emphasis in original).

In line with this argument, Plaintiff points out that "New Mexico law . . . does not require that the duty to defend be decided in the underlying action." Plaintiff's Resp. at 5. True enough, as Plaintiffs acknowledge in a footnote, and as other courts in this district have noted, New Mexico law recognizes an important distinction between the duty to defend and the duty to indemnify. *See W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1274 (D.N.M. 2019) (citing *Found. Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982)); *Acuity v. Astorga*, No. 20-cv-37-SWS-MLC, 2020 WL 8922213, (D.N.M. Apr. 16, 2020). The New Mexico Supreme Court has expressly stated that "the duty to indemnify is distinct from . . . [the] duty to defend." *Ins. Co. of N. Am. v. Wylie Corp.*, 733 P.2d 854,

857 (N.M. 1987); *see City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 213 P.3d 1146, 1155 (N.M. Ct. App. 2009).  The practical effect of this distinction is that "[t]he duty to defend is determined primarily by examining the underlying complaint and the insurance policies, whereas the duty to indemnify often 'requires the resolution of material facts.'" *Acuity*, 2020 WL 8922213, at *5 (quoting *BPLW*, 213 P.3d at 1155).  Further, "[i]f the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required."  *Atyani*, 366 F. Supp. 3d at 1281 (quoting *Bernalillo Cty. Deputy Sheriffs Ass'n v. Cty. of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992)).

The Court notes that these principles of New Mexico law have a significant impact on the evaluation of the fourth *Mhoon* factor.  It is important to emphasize that Plaintiff raises five arguments pertaining to its duties to Gomez in its complaint.  Two of these arguments hinge upon the interpretation of policy exclusions: the "Molestation or Abuse exclusion" and the "Intentional Acts exclusion."   The other three arguments, however, appear to be legal arguments speaking directly to the policy's notification requirements, whether punitive damages are covered by insurance, and whether Gomez is even insured under the policy at all.  These claims fall within what *Kunkel* described as "*purely legal question[s]* of contract interpretation which arise[] in the context of a justiciable controversy presenting other factual issues."  866 F.2d at 1276 (emphasis added); *see also West Am. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1234 (D.N.M. 2018) (applying similar

reasoning).  At a minimum, the Court can evaluate Plaintiff's arguments as they pertain to the duty to defend.[3]

Further, principles of New Mexico law suggest the Court may be able to determine the applicability of the two exclusions if necessary.  The New Mexico courts have clearly established the procedure courts must follow in determining whether a duty to defend or indemnify exists.  *See BPLW*, 213 P.3d at 1150.  Those instructions are as follows:

> In disputes stemming from insurance contracts, the "duty to defend arises out of the nature of the allegations in the complaint," and is determined "by comparing the factual allegations in the complaint with the insurance policy." If a complaint "states facts that bring the case within the coverage of the policy," then the duty to defend will be triggered. However, "[i]f the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required."

*Id.* (internal citations omitted).

The Court can follow these guidelines and engage in this comparison without having to decide the facts of the underlying Ornelas action.  But even if the Court were to go further than a simple comparison of the complaint and the policy, the case law from the Supreme Court and the Tenth Circuit would support such action.  The Supreme Court has cautioned against "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" because jurisdiction in declaratory actions is

---

[3] The Court notes Defendant Ornelas's argument based on a decision of the New Mexico Supreme Court, *Knowles v. United Services Automobile Association*, 832 P.2d 394 (N.M. 1992).  Defendant Ornelas argues "the New Mexico Supreme Court recognized that exclusionary clauses which exclude coverage which the insured would have reasonably understood was afforded by the policy may not be enforceable."  Defendant Ornelas's Reply at 2.  The Court needn't consider this argument further because the facts of the underlying complaint make it inapposite.

discretionary.   *Brillhart*, 316 U.S. at 395.   The Court looks to the Tenth Circuit's "substantial guidance" to determine what constitutes "gratuitous interference."   *See Mhoon*, 31 F.3d at 983; *Brillhart*, 316 U.S. at 395.   *Mhoon* is particularly instructive here. There, the Tenth Circuit held that a district court's "own independent factual finding" about whether tortious conduct was intentional comported with the Supreme Court's precedent. *See Mhoon*, 31 F.3d at 985.   As such, any action that falls short of *Mhoon* should not be considered "gratuitous interference" under *Brillhart*.   *See id.*; *Brillhart*, 316 U.S. at 395. The Court does not foresee the need to go as far as the district court did in *Mhoon*. Therefore, the Court concludes that its exercise of jurisdiction would not run afoul of *Brillhart*'s command and accordingly finds the fourth *Mhoon* factor weighs in favor of retaining jurisdiction.

Finally, the Court considers the fifth *Mhoon* factor—"whether there is an alternative remedy which is better or more effective."   *Mhoon*, 31 F.3d at 983.   Defendant Ornelas argues "the state court proceeding provides a more efficient and comprehensive remedy" than this action.   Defendant Ornelas's Mot. at 6.   Defendant Ornelas relies on a prior decision of this Court, *State Farm Insurance Company v. Jimenez*, No. 11-CV-1122-BRB/SMV, 2012 WL 13013133, (D.N.M. Mar. 6, 2012), as support.   Plaintiff responds by arguing "[t]he instant case is different from the cited cases because the underlying state court proceeding does not address the coverage issue."   Plaintiff's Resp. at 15.   Plaintiff is correct.   *Jimenez* is clearly distinguishable from the case presently before the Court.   There, the underlying state suit was an action seeking a declaration about the insurance company's obligation under the policies it had issued to Jimenez.   *See Jimenez*, 2012 WL 13013133,

14

at *1.  Thus, the federal declaratory action and the underlying state action were parallel proceedings.  *See id.*  Accordingly, the Court appropriately found the *Mhoon* factors counseled against jurisdiction.  *See id.* at *2–3.  As already noted, the cases before this Court and the state court are not parallel proceedings.  Therefore, *Jimenez* is inapposite. Because Plaintiff's declaratory action is markedly different from the Ornelas action, the Court concludes the fifth *Mhoon* factor also weighs in favor of retaining jurisdiction.

Accordingly, the Court concludes that each of the five *Mhoon* factors weighs in favor of retaining jurisdiction.  The Court further concludes that neither dismissal nor a stay of proceedings is appropriate at this time.[4]  Therefore, Defendant Ornelas's motion to dismiss or stay is **DENIED**.

The clerk of court is directed to email a copy of this order to Eric M. Brittain, Defendant Gomez's counsel in the state court action, at brittain@windlehood.com.

Entered for the Court
this 4th day of October, 2021


Bobby R. Baldock
United States Circuit Judge
Sitting by Designation

---

[4] The Court notes that its decision to retain jurisdiction does not preclude it from considering a renewed motion to dismiss or stay if the facts and circumstances of the case later make it appropriate.

15